UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LLOYD HICKS,

                Petitioner,               Case No. 00-CV-10492-BC
                                           Honorable David M. Lawson

v.

BARBARA BOCK,

                Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, Lloyd Hicks, presently confined at the Saginaw Correctional Facility in Freeland, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is incarcerated in violation of his constitutional rights. The petitioner was convicted of first-degree felony murder, armed robbery, and possession of a firearm in the commission of a felony following a consolidated jury trial in the Detroit Recorder's Court in 1992. Hicks was sentenced to life in prison on the felony murder count and two years in prison on the possession of a firearm in commission of a felony count; he received a suspended sentence for the armed robbery conviction. In his petition, Hicks raises claims relating to the trial judge's instructions to the jury, the voluntariness of his waiver to testify on his own behalf, the prosecutor's conduct during trial, the certification of a Chinese interpreter, the evidentiary basis of the prosecutor's arguments, the effectiveness of his trial attorney, the sufficiency of the evidence supporting his convictions, and the cumulative effect of errors made at trial.

      The respondent challenges all of the petitioner's claims as procedurally defaulted either because the petitioner failed to timely seek review of these issues on appeal or because he failed to raise certain issues at all during his direct appeal. However, on January 25, 2002, the Court entered

an order barring the respondent from raising procedural challenges to the petitioner's claims because the respondent missed filing deadlines and failed to submit state court records as ordered by the magistrate judge and this Court. The Court nonetheless finds that the petitioner's claims lack merit and therefore will deny the petition.

I.

The petitioner's conviction arises from the robbery of Cheng's Garden Restaurant in Detroit, Michigan and the shooting death of Steven Cheng on March 8, 1992. The petitioner and co-defendant Jason Armour were tried jointly before Judge Thomas E. Jackson in the Detroit Recorder's Court, but with separate juries hearing their cases. On October 22, 1992, the petitioner was found guilty of first-degree felony murder, armed robbery, and possession of a firearm in the commission of a felony.

At trial, Hui Lian Cheng, Zhao Ming Cheng, and Da Jing Zheng testified through an interpreter about the events that occurred during the evening of March 8, 1992. Hui Lian Cheng testified that the petitioner and Armour came into the restaurant brandishing guns. Hui said that Armour grabbed Steven Cheng, put a gun to Cheng's temple, and demanded money. When Steven Cheng failed to respond, Armour pushed him to the ground. Armour then searched Steven Cheng's pockets and socks taking what money Armour could find. Thereafter, Armour demanded money of Hui Lian Cheng. At that point, Armour and Steven Cheng went to the kitchen where Armour obtained more money from a work bench. Hui Lian Cheng testified that she observed the petitioner looking around in the kitchen. At some point, the petitioner took some change from the kitchen before he emptied the cash register. The petitioner was holding a gun while he searched for money.

Hui said that the petitioner shouted at Armour to leave the restaurant. Armour, however, shot Steven Cheng as Armour and the petitioner were exiting the restaurant.

Hui Lian Cheng further testified that Armour also had robbed the restaurant at gunpoint the previous Friday, but she was not certain whether the petitioner assisted Armour on that occasion. However, Hui Lian identified the petitioner at a photographic lineup conducted at the police station subsequent to the shooting. When she was shown the photographic array, Hui Lian stated that the photograph of the petitioner looked like the "small guy" who was involved in the robbery. At trial, Hui Lian testified that she was certain that the petitioner was the "small guy" who had been involved in the robbery that resulted in Steven Cheng's death.

Zhao Ming Cheng also testified that he saw Armour shoot Steven Cheng, his brother. He also related that he had seen Armour rob the restaurant at gunpoint the previous Friday. On the night of the shooting, Zhao Ming Cheng testified, he saw the petitioner and Armour come into the restaurant armed with guns. At about 10:30 p.m., Armour came into the kitchen, pointed the gun at Steven Cheng, and demanded money from him. The petitioner apparently demanded money from Da Jing Zheng and searched a shelf, the bathroom, and the cash register for money. According to Zhao Ming, after taking money from Steven Cheng, Hui Lian Cheng, and a work bench area in the kitchen, Armour pushed Steven Cheng to the floor before shooting him. Zhao Ming also identified the petitioner in a photographic lineup. He said that the entire robbery and shooting lasted about fifteen minutes.

Da Jing Zheng described a similar version of the events. Zheng recalled that Armour had robbed the restaurant the previous Friday and testified that he saw Armour shoot Steven Cheng on March 8, 1992. Zheng also stated that he had witnessed the petitioner's participation in the earlier

robbery. Although he was not entirely certain, he seemed to remember that the petitioner had asked

him for money. Zheng, however, testified that he was certain the petitioner was involved in the

second robbery, and he was able to identify the petitioner from both a photographic and live lineup.

Zheng also recalled that the robbery and shooting lasted little more than ten minutes.

Customers present at the restaurant that evening also testified as to the events. Michael

Browner testified that he went to Cheng's Garden Restaurant on March 8, 1992 with his girlfriend,

Ta-Tashana Scott. Browner went into the restaurant to place an order while Scott remained in the

car. After placing his order, Browner observed the petitioner and Armour enter the restaurant.

Armour told Browner to "be cool, man, it's a stickup." According to Browner, Armour lifted his

jacket and displayed what Browner believed to be a .357 revolver. Browner further testified that the

petitioner also had a firearm in his hand, which Browner thought was a .38 caliber gun. Browner

then observed the men go into the kitchen area of the restaurant.

Browner related that he could see into the kitchen area only through a doorway and therefore

could not see the petitioner and Armour the entire time. However, Browner stated, he did observe

the petitioner remove money from a cash register. Browner testified that he also saw Armour follow

Steven Cheng into the kitchen and at some point throw Steven Cheng to the ground and demand

money. Apparently, Browner heard Steven Cheng respond but was unable to make out exactly what

was said. Browner then saw Armour pick up Cheng and walk back through the door, and he later

heard a gunshot. Although before the shot Browner noticed that the petitioner had pointed a gun in

Cheng's direction, Browner could not say whether the petitioner had fired the shot because at that

point he closed his eyes or turned his head. Browner also testified that he paid most attention to the

petitioner during the evening's events because the petitioner had come into the restaurant wielding a gun.

Ta-Tashana Scott testified that while sitting in her car waiting for Browner, she observed two people walk to a red car, which she believed to be a red Honda. The men got into the car and left. A few minutes later, the car returned and parked in an alley near a light. The two men got out and went into the restaurant. The men remained in the restaurant five or six minutes before walking out. Scott subsequently identified Armour as one of the men whom she observed getting into and out of the red car, but she identified someone other than the petitioner as having been the second man. Scott later identified a red car as the car that she had seen at Cheng's Garden on the night of the murder. Counsel stipulated at trial that the car she identified was registered to Armour and had been recovered from the petitioner's address.

At the conclusion of the trial, the jury returned guilty verdicts on all the charged offenses. Thereafter, the procedural history of this case is somewhat confusing. Following sentencing, the state appellate defender was appointed to represent the petitioner on appeal. An assistant state appellate defender filed a claim of appeal and a motion for extension of time to file a brief on appeal on June 9, 1993. Later that year, with the assistance of a different attorney and while the appeal was pending, the petitioner filed a motion in the trial court for relief from judgment and for a hearing to determine whether his counsel had been ineffective, commonly known as a *Ginther* hearing. *See People v. Ginther*, 390 Mich. 436, 443-44 (1973) (holding that "[a] defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts"). The motion was denied. However,

the petitioner persisted in his effort to obtain an evidentiary hearing, and on August 26, 1994, the

Michigan Court of Appeals granted the petitioner's later motion to remand for a *Ginther* hearing to

determine whether trial counsel had been ineffective. The *Ginther* hearing was held in the trial court

between November 1994 and January 1995. The petitioner's trial attorney, mother, sister and friend

(who was a putative alibi witness) all testified at the hearing, as did the petitioner himself. After the

*Ginther* hearing concluded, the trial court denied the petitioner's motion for a new trial.

In October 1995, the petitioner filed in the Michigan Court of Appeals a delayed application

for leave to appeal the trial court's denial of his motion for a new trial, arguing that he received

ineffective assistance of counsel. On December 1, 1995, the Michigan Court of Appeals dismissed

the petitioner's application for leave to appeal this decision because the issue could be raised in the

petitioner's appeal of right, which was still pending in that court. In her brief in response to the

petition for a writ of habeas corpus, the respondent reports that in November of 1995, the petitioner

filed a *pro se* motion to file a supplemental brief in the Michigan Court of Appeals, and that the

court of appeals entered an order on February 8, 1996 dismissing the appeal for failure to file a

timely brief. However, no documents with regard to these proceedings appear in the Rule 5

materials eventually furnished by the respondent. In April of 1996, the petitioner moved through

counsel to reinstate the appeal of right in the Michigan Court of Appeals. The motion was granted.

In his appellate brief, the petitioner raised the following issues:

> I.    THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO
>       FIND APPELLANT LLOYD HICKS GUILTY OF FELONY MURDER
>       (ARMED ROBBERY);
>
> II.   THE TRIAL COURT'S FAILURE TO ASCERTAIN ON THE RECORD
>       WHETHER THE APPELLANT LLOYD HICKS INTELLIGENTLY AND
>       KNOWINGLY WAIVED HIS RIGHT TO TESTIFY REQUIRES A NEW
>       TRIAL;

III.   APPELLANT LLOYD HICKS WAS DENIED A FAIR TRIAL BY THE
       PROSECUTOR'S MISCONDUCT IN VIOLATION OF THE DUE
       PROCESS CLAUSE;

    A.   THE PROSECUTOR'S MISREPRESENTATION ABOUT PRIOR
            BAD ACTS DENIED APPELLANT OF [sic] A FAIR TRIAL;

    B.   THE PROSECUTOR DENIED APPELLANT OF [sic] A FAIR
            TRIAL BY NOT DISCLOSING THE PROCEDURE FOLLOWED
            WITH THE INTERPRETERS IN THE INITIAL POLICE
            INVESTIGATION;

    C.   THE PROSECUTOR DENIED APPELLANT OF [sic] A FAIR
            TRIAL BY HIS IMPERMISSIBLE ARGUMENTS;

IV.    THE TRIAL COURT FAILURE [sic] TO SUA SPONTE DECLARE A
       MISTRIAL WHERE APPARENT DUE PROCESS VIOLATION AROSE
       DURING THE TRIAL, THEREFORE, APPELLANT IS ENTITLED TO A
       NEW TRIAL;

    A.   THE TRIAL COURT'S OFFICIAL INTERPRETER FAILED TO
            COMPLY WITH HIS SWORN OATH AND DENIED
            APPELLANT OF [sic] A FAIR TRIAL;

    B.   THE LATE DISCLOSURE OF MULTI-INTERPRETERS [sic]
            DURING THE WITNESSES' INTERVIEWS AND LINEUPS
            DENIED APPELLANT OF [sic] A FAIR TRIAL;

    C.   APPELLANT WAS DENIED A FAIR TRIAL BY THE
            ADMISSION OF OTHER BAD ACTS EVIDENCE ATTRIBUTED
            TO THE CO-DEFENDANT;

V.     APPELLANT HICKS WAS DENIED THE EFFECTIVE ASSISTANCE OF
       COUNSEL GUARANTEED HIM BY THE FEDERAL AND STATE
       CONSTITUTIONS AT TRIAL;

    A.   COUNSEL FAILED TO INSURE FAIR CONDITIONS AT TRIAL;

    B.   COUNSEL FAILED TO PROPERLY INVESTIGATE AND
            ADVANCE HIS ALIBI DEFENSE.

The Michigan Court of Appeals affirmed the petitioner's conviction on June 6, 1997.

*People v. Hicks,* 161369 (Mich. Ct .App. June 6, 1997).  The petitioner filed an application for leave

to appeal in the Michigan Supreme Court, which was rejected as untimely on March 26, 1998.  In its brief in response to the petition for a writ of habeas corpus, the State reports that in September of 1997, the petitioner filed a motion for relief from judgment in the trial court, raising the following issues:  (1) the court improperly instructed the jury on the intent required in felony murder, (2) appellate counsel was ineffective for failing to raise the issue.  This motion does not appear in the Rule 5 materials.  The trial court denied the motion, *see People v. Hicks,* 92-005302 (Detroit Recorder's Court, December 8, 1997), and the petitioner filed a delayed application for leave to appeal this decision on December 4, 1998, raising the following issues:

> I.    DEFENDANT HICKS WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE JURY WAS INSTRUCTED THAT THEY COULD FIND NECESSARY INTENT FOR MURDER FROM THE INTENT TO COMMIT A ROBBERY;

> II.   DEFENDANT HICKS HAS ESTABLISHED AN ENTITLEMENT TO RELIEF FROM THE JUDGMENT OF HIS CONVICTION AND SENTENCE BY DEMONSTRATING GOOD CAUSE FOR THE FAILURE TO RAISE HIS PRESENT CLAIMS ON DIRECT APPEAL OR IN A PRIOR MOTION AND, [sic] ACTUAL PREJUDICE FROM THE ALLEGED IRREGULARITIES IN THIS CRIMINAL PROCESS.

The Michigan Court of Appeals denied the petitioner's application for leave to appeal.  *People v. Hicks,* 216215 (Mich. Ct. App. November 10, 1999); *lv. den.* 462 Mich. 868; 616 N. W. 2d 688 (2000).  The petitioner filed an application for leave to appeal to the Michigan Supreme Court on November 29, 1999 raising the following issues:

> I.    DEFENDANT-APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE JURY WAS INSTRUCTED THAT THEY COULD FIND THE NECESSARY INTENT FOR MURDER FROM THE INTENT TO COMMIT A ROBBERY;

> II.   DEFENDANT-APPELLANT ESTABLISHED AN ENTITLEMENT TO RELIEF FROM JUDGMENT OF HIS CONVICTION AND SENTENCE BY DEMONSTRATING GOOD CAUSE FOR THE FAILURE TO RAISE

-8-

HIS PRESENT CLAIMS ON DIRECT APPEAL OR IN A PRIOR MOTION
AND ACTUAL PREJUDICE FROM THE ALLEGED IRREGULARITIES
IN THIS CRIMINAL PROCESS;

III.    THE TRIAL COURT'S FAILURE TO ASCERTAIN ON THE RECORD
WHETHER THE DEFENDANT-APPELLANT INTELLIGENTLY AND
KNOWINGLY WAIVED HIS RIGHT TO TESTIFY REQUIRES A NEW
TRIAL;

IV.     DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE
PROSECUTOR'S MISCONDUCT IN VIOLATION OF THE DUE
PROCESS CLAUSE;

   A.   THE PROSECUTOR'S MISREPRESENTATION ABOUT PRIOR
        BAD ACTS DENIED DEFENDANT-APPELLANT OF [sic] A
        FAIR TRIAL;

   B.   THE PROSECUTOR DENIED DEFENDANT-APPELLANT OF
        [sic] A FAIR TRIAL BY NOT DISCLOSING THE PROCEDURE
        FOLLOWED WITH THE INTERPRETERS IN THE INITIAL
        POLICE INVESTIGATION;

   C.   THE PROSECUTOR DENIED DEFENDANT-APPELLANT OF
        [sic] A FAIR TRIAL BY HIS IMPERMISSIBLE ARGUMENTS;

V.      THE TRIAL COURT FAILURE [sic] TO SUA SPONTE DECLARE A
MISTRIAL WHERE APPARENT DUE PROCESS VIOLATION AROSE
DURING THE TRIAL, THEREFORE, DEFENDANT-APPELLANT IS
ENTITLED TO A NEW TRIAL;

   A.   THE TRIAL COURT'S OFFICIAL INTERPRETER FAILED TO
        COMPLY WITH HIS SWORN OATH AND DENIED
        DEFENDANT-APPELLANT OF A FAIR TRIAL;

   B.   THE LATE DISCLOSURE OF MULTI-INTERPRETERS [sic]
        DURING THE WITNESSES' INTERVIEWS AND LINEUPS
        DENIED DEFENDANT-APPELLANT OF A FAIR TRIAL;

   C.   DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY
        THE ADMISSION OF OTHER BAD ACTS EVIDENCE
        ATTRIBUTED TO THE CO-DEFENDANT;

VI.     DEFENDANT-APPELLANT   WAS   DENIED   THE   EFFECTIVE
ASSISTANCE OF COUNSEL GUARANTEED HIM BY THE FEDERAL
AND STATE CONSTITUTIONS AT TRIAL;

A.      COUNSEL FAILED TO INSURE FAIR CONDITIONS AT TRIAL;

B.      COUNSEL   FAILED   TO   PROPERLY   INVESTIGATE   AND
ADVANCE HIS ALIBI DEFENSE.

The Michigan Supreme Court also denied the petitioner's application for leave to appeal on May

31, 2000.  *People v. Hicks*, 462 Mich. 868; 616 N. W. 2d 688 (2000).  Thereafter, the petitioner filed

a petition for a writ of habeas corpus in this Court on December 27, 2000 raising the following

issues:

I.      Petitioner was denied due process [and] a fair trial, when the jury instructions
were vague [and] stated that the jury could find the necess[ary] intent for
murder from the intent to commit robbery.

II.     The trial court failed to ascertain on the record whether the petitioner
intelligently and knowingly waived his right to testify, requiring a new trial.

III.    Petitioner was denied a fair trial by the prosecutor's misconduct in violation
of the due process clause of the Constitution.

IV.     The prosecutor denied petitioner a fair trial by not disclosing to the defense
that the interpreter used to translate the trial, was not certified.

V.      Petitioner was denied a fair trial when the prosecutor presented arguments,
that [were] not supported by the evidence or testimony.

VI.     The trial court's official interpreter failed to comply with his sworn oath and
denied petitioner a fair trial.

VII.    Petitioner['s] constitutional rights under the 6th Amendment, to effect[ive]
assistance of counsel was denied, when counsel failed to investigate the alibi
defense of the petitioner, [and failed to] object[] to the prosecutor['s]
violation of <u>Brady</u> . . .  [and to] the jury instructions provided to the jury.

VIII.   The evidence was insufficient as a matter of law to find petitioner guilty of
felony murder and armed robbery.

-10-

IX.     The malice jury instruction, violated petitioner's right to a fair trial.

X.      The cumulative effect of errors denied the petitioner the right to a fair trial.

Magistrate Judge Marc L. Goldman issued an order setting the response deadline for March 9, 2001 [dkt # 3]. The petitioner filed a supplement to the petition on January 18, 2001 adding the claim that the identification of the petitioner was suggestive and perjured. After the deadline to file a response had passed, the petitioner moved for a contempt order for the respondent's failure to file a responsive pleading. The respondent filed a motion to enlarge time to file a response by 120 days on April 2, 2001, explaining that counsel for respondent had not yet received the Rule 5 materials. The respondent next filed a notice of filing Rule 5 materials on July 11, 2001. On August 7, 2001, well after 120 days had expired, the respondent filed a response as well as another motion for enlargement of time to respond. In an order dated October 15, 2001, Magistrate Judge Komives advised the respondent to file the entire state court record within 21 days. After the respondent failed to acknowledge the order, this Court issued an order on January 25, 2002 sanctioning the respondent for failing to file the remainder of the state court records [dkt # 18], some of which have yet to be filed, as noted earlier. The Court believes, however, that the records now before it are adequate to allow adjudication of all the claims.

## II.

Although the petitioner's trial took place in 1992, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). That Act "circumscribe[d]" the standard of

review federal courts must apply when considering applications for a writ of habeas corpus raising

constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.

1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's

application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this

Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)

("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court, a determination of a factual issue made by a State court

shall be presumed to be correct."); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995)

("We give complete deference to state court findings unless they are clearly erroneous.").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

-12-

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir. 2002).

The respondent challenges the petitioner's application solely on the grounds that his claims remain unexhausted in the state courts and are therefore procedurally defaulted. Under normal circumstances, the argument that a prisoner has failed to exhaust state remedies and therefore his claims are procedurally defaulted, while technically incorrect, might be of little consequence. The application of the procedural default doctrine to claims that were not raised in the state court and can no longer be raised, as here, would operate to bar those claims, *see Rust v. Zent*, 17 F.3d 155, 160

-13-

(6th Cir. 1994), unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Alternatively, a habeas petitioner might survive procedural default if he "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162. These are not insignificant hurdles.

In an order dated January 25, 2002, however, the Court imposed sanctions on the respondent for failing to file all portions of the state record as required by Rule 5, Rules Governing Section 2254 Cases, in accordance with court-imposed deadlines. The Court determined that barring the respondent from raising procedural defenses to the habeas petition was an appropriate sanction especially in light of the respondent's failure to comply with deadlines. *See Bennett v. Collins,* 835 F. Supp. 930, 936-37 (E.D. Tex. 1993). The Court, however, did allow the respondent to insist on the exhaustion requirement, since that defense may not be barred absent an effective waiver by the State. *See* 28 U.S.C. § 2254(b)(3).

As a result, the respondent's only remaining argument is that the petitioner has not exhausted available state court remedies. The doctrine of exhaustion of state remedies requires state prisoners to "fairly present" their claims as federal constitutional issues in the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Rust*, 17 F.3d at 160. The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process, including a petition for discretionary review to a state supreme court. *O'Sullivan*, 526 U.S. at 845. A prisoner "'fairly presents' his claims to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis,

-14-

or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Prather v. Rees*, 822 F.2d 1418, 1420 (6th Cir. 1987) (holding that "[o]rdinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations"). A Michigan petitioner must present each ground to both Michigan appellate courts before seeking federal habeas corpus relief. *See Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Rust*, 17 F.3d at 160.

The Michigan Court Rules provide a process through which a petitioner may raise unexhausted claims and any additional claims. The petitioner can file a motion for relief from judgment pursuant to Michigan Court Rule 6.500 *et seq.*, which allows the trial court to appoint counsel, seek a response from the prosecutor, expand the record, permit oral argument, and conduct an evidentiary hearing on the petitioner's claims. The petitioner may appeal the trial court's disposition of his motion for relief from judgment to the Michigan Court of Appeals and Michigan Supreme Court. To obtain relief, he must show cause for failing to raise his unexhausted claims on direct review and resulting prejudice or a significant possibility of innocence. *See* Mich. Ct. R. 6.508(D)(3).

The respondent insists that the petitioner failed to exhaust state court remedies with respect to each of his claims. According to the respondent, the petitioner did not raise these issues in his appeal of right to the Michigan Court of Appeals and did not timely seek leave to appeal in the Michigan Supreme Court. Instead, the petitioner first presented these issues to the state trial court in the form of a motion for relief from judgment. The trial court denied this motion, and both the

-15-

Michigan Court of Appeals and Supreme Court denied the petitioner's application for leave to
appeal citing Michigan Court Rule 6.508(D).

> Rule 6.508(d) provides, in relevant part:
>
> (D) Entitlement to Relief.  The defendant has the burden of establishing entitlement
> to the relief requested. The Court may not grant relief to the defendant if the motion
> . . .
> (3) alleges grounds for relief, other than jurisdictional defects, which could have
> been raised on appeal from the conviction and sentence or in a prior motion under
> this subchapter, unless the defendant demonstrates
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> (b) actual prejudice from the alleged irregularities that support the claim for relief.
> As used in this  subrule, "actual prejudice" means that,
>> (i) in a conviction following a trial, but for the alleged error, the
>> defendant would have had a reasonably likely chance of acquittal;
>> (ii) in a conviction entered on a plea of guilty, guilty but mentally ill,
>> or nolo contendere, the defect in the proceedings was such that it
>> renders the plea an involuntary one to a degree that it would be
>> manifestly unjust to allow the conviction to stand;
>> (iii) in any case the irregularity was so offensive to the maintenance
>> of a sound judicial process that the conviction should not be allowed
>> to stand regardless of its effect on the outcome of the case;
>> (iv) in the vase of a challenge to the sentence, the sentence is invalid.

The fact that the Michigan Court of Appeals and the Michigan Supreme Court cited to and based
their decisions to deny leave to appeal on state procedural grounds does not mean, as the respondent
suggests, that the petitioner has failed to exhaust his state court remedies.  The doctrine requires only
that a petitioner "fairly present" each ground to both appellate courts pursuant to Michigan's
procedural rules.  *Prather*, 822 F.2d at 1420 (holding that "[o]rdinarily, the state courts must have
had the opportunity to pass on defendant's claims of constitutional violations").

　　In fact, the Michigan Court Rules contemplate collateral challenges not raised on direct
review and provide a means for relief in certain instances.  *See e.g.* Mich. Ct. R. 6.508(d) (providing
relief from judgment where a claim not raised on direct appellate review for good reason presents
errors that if not committed were reasonably likely to result in acquittal).  To be sure, the petitioner

has a formidable burden under Michigan law.  However, to exhaust available remedies the petitioner need not be successful on his claim; he must only present it.  Here, the petitioner, as permitted by the Michigan Court Rules, filed a motion for relief from judgment challenging the jury instructions used in his case in the state trial court.  The court of appeals upheld the trial court's denial and the supreme court denied leave to appeal.  Therefore, although he was unsuccessful, the petitioner did complete one round of the state's established appellate review process as required by 28 U.S.C. §2254(b)(1)(A) and (c).  *See O'Sullivan,* 526 U.S. at 845.  The Court therefore finds that the petitioner has exhausted available state remedies.  Since the doctrine of procedural default is not available to the respondent in this case, the Court will address the merits of the petitioner's claims.

III.

A.

The petitioner's first and ninth claims, which appear to be identical, challenge the jury instructions given at trial.  He claims that the instruction on malice, an element of first-degree felony murder, was erroneous because it allowed the jury to infer malice from the intent to commit the underlying felony.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'"  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).  The court must "inquire 'whether there is a reasonable likelihood that the jury has applied

-17-

the challenged instruction in a way' that violates the Constitution." *Ibid.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

In Michigan, the elements of first-degree felony murder are (1) the killing of a human being; (2) with an intent to kill, to cause great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result, (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute. *People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130 (1999). To convict a defendant of first-degree felony murder, the prosecution must prove that the defendant acted either with an intent to kill, an intent to do great bodily harm, or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm. *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996) (citing *People v. Aaron*, 409 Mich. 672, 733; 299 N.W.2d 304 (1980)). This showing of malice is identical to that required for a second-degree murder conviction. *People v. Dykhouse,* 418 Mich. 488, 494; 345 N.W.2d 150 (1984). As is true with second-degree murder, the facts and circumstances surrounding a killing can give rise to an inference of malice, and a jury may infer malice from evidence that a defendant intentionally set into motion a force likely to cause death or great bodily harm. *Ibid.*

In this case, the trial court instructed the jury on the elements of first-degree felony murder and the lesser included offense of second-degree murder. The court told the jury that for first-degree felony murder, the prosecutor did not have to prove that the murder was premeditated, planned, or designed, as in cases involving premeditated murder. The court further explained that first-degree felony murder is murder committed during the course of a felony, in this case a robbery. After explaining the elements of the lesser offense of second-degree murder, the trial court stated that first-degree felony murder consisted of the essential elements of second-degree murder, with the

-18-

additional factor of a felony occurring during the murder.  Most significantly, the trial court explained that when the murder was committed, the prosecution had to show that the petitioner either had the intent to kill, the intent to do great bodily harm, or that he knowingly created a very high risk of death or great bodily harm knowing that death or such harm was the likely result of such actions.  Tr. 10/21/1992 at 74-76.

The trial court's instructions adequately explained the element of malice to the jury and did not suggest to them that they could infer intent solely from the commission of the underlying felony. Therefore, the instructions given by the state trial court presented no "reasonable likelihood that the jury has applied the challenged instruction in a way" inconsistent with the Constitution.  *Boyde v. California*, 494 U.S. 370, 380 (1990).  Moreover,  the petitioner has not shown specifically in what way the jury misapplied the trial court's instruction or that the instruction "so infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72.  Thus, the petitioner is unable to demonstrate that he was deprived of a fair trial.

B.

The petitioner next claims that he is entitled to habeas relief because the trial court failed to ascertain on the record whether he intelligently and knowingly waived his right to testify.  The last court to issue a reasoned opinion addressing this claim, the Michigan Court of Appeals, rejected that claim based on the following reasoning:

> Defendant next argues that he is entitled to a new trial because the trial court did not ascertain on the record whether he knowingly and intelligently waived his right to testify on his own behalf.  Defendant's claim raises a constitutional issue.  This Court reviews such constitutional questions de novo.  *People v. Houstina*, 216 Mich. App. 70, 73; 549 N.W.2d 11 (1996).

> Defendant's argument is without merit.  In Michigan, there is no requirement of an on-the-record waiver of a defendant's right to testify.  *See People v. Simmons*, 140 Mich. App. 681, 684; 364 N.W.2d 783 (1985); *see also People v. Harris*, 190 Mich.

-19-

> App. 652, 661; 476 N.W.2d 767 (1991).  Contrary to defendant's contention on appeal, nothing in the United States Supreme Court's opinion in *Rock v. Arkansas,* 483 U.S. 44, 51-52; 107 S. Ct. 2704; 97 L. Ed. 2d 37 (1987), which expressly recognized that a criminal defendant's right to testify on his own behalf is a fundamental constitutional right, mandates a change in the Michigan rule.  This Court, in *Simmons*, also recognized the fundamental importance of defendant's right to testify on his own behalf, but further explained that the existence of a fundamental constitutional right does not necessarily require application of the same procedural safeguards as applied to other constitutional rights, such as waiver of the right to counsel.  *Simmons,* supra at 683-685.  Accordingly, we hold that trial court made no error with regard to defendant's waiver of his right to testify.

*Hicks*, 1997 WL 33347877 at *2.

The Sixth Circuit has described the right of a criminal defendant to testify on his own behalf at trial as one "of fundamental dimension . . . subject only to a knowing and voluntary waiver by the defendant."  *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000) (citing *Rock v. Arkansas*, 483 U.S. 44, 52 (1987)).  This right derives from multiple sources.  "It is a right that is essential to due process of law in a fair adversary process and thus falls under the protections of the Fifth and Fourteenth Amendments"  *Ibid.* (internal quotations omitted).  The right to testify also finds protection in the Compulsory Process Clause of the Sixth Amendment, "which grants a defendant the right to call witnesses in his favor," including the defendant himself.  *Rock*, 483 U.S. at 52.

The decision to testify is "personal to the defendant," and may therefore only be relinquished by the defendant.  *Webber*, 208 F.3d at 550-51.  Accordingly, the defendant's waiver of the right to testify must be knowing and intentional.  *Id.* at 551.  Although the decision ultimately belongs to the defendant, it is defense counsel's role to advise the defendant whether he should testify.  Thus, when a defendant does not take the stand, the defendant's "assent is presumed."  *Ibid.*  This presumption exists in large part because defense counsel is "'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more

particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of prosecution.'" *Ibid.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 690 (1984)).

Consequently, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Webber*, 208 F.3d at 551. "At base, a defendant must 'alert the trial court' that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Ibid.* (internal quotations omitted). If a defendant remains silent, "waiver of the right to testify may be inferred from the defendant's conduct." *Ibid.*

In this case, the petitioner made no indication to the state trial court that he wished to testify. Nor does he point to specific instances of conduct from which the trial court could have inferred either a disagreement with counsel in this regard or the desire to testify. The petitioner's sole argument is that the trial court should have inquired on the record as to the voluntariness of his choice to remain silent. The Sixth Circuit, however, has squarely rejected this argument noting that it confuses the right to testify with other fundamental rights:

> While we recognize that trial courts are required to inquire directly of the defendant in regard to whether the defendant is knowingly and intentionally entering a plea of guilty, waiving a jury trial, or foregoing the assistance of counsel, we are convinced that the right to testify 'qualitatively differs' from those rights in that a *sua sponte* inquiry from the trial judge regarding the defendant's choice to testify might impede on an appropriate defense strategy, might lead the defendant to believe that defense counsel has been insufficient, or might inappropriately influence the defendant to waive the Fifth Amendment right *not* to testify.

*Id.* at 551-52 (internal citation omitted).  There is therefore no federal constitutional right to have a trial judge inquire as to whether a criminal defendant who does not testify on his own behalf has voluntarily chosen to forego that right.  The Michigan Court of Appeals decision denying this claim was neither contrary to nor an unreasonable application of federal law.

C.

In his third and fifth claims, the petitioner suggests that the prosecutor engaged in misconduct by introducing evidence that he and co-defendant Armour previously committed an armed robbery at Cheng's Garden Restaurant prior to the murder.  In his third claim, the petitioner contends that the prosecutor introduced this evidence for the sole purpose of prejudicing the jury.  In his fifth claim,  the petitioner alleges that the prosecutor should not have introduced this evidence because none of the witnesses identified the petitioner as having participated in this previous robbery.  The trial court permitted the prosecutor to introduce this evidence for the purpose of establishing identification.  *See* Mich. R. Evid. 404(b).

Prosecutorial misconduct will form the basis for a new trial, and habeas relief, only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.  *Donnelly*, 416 U.S. at 643-46; *see also Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation").  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982).  The Court must examine

"'the fairness of the trial, not the culpability of the prosecutor.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

In deciding whether prosecutorial misconduct warrants habeas corpus relief, a court must first decide whether the prosecutor's comments were improper and then determine whether the remarks were sufficiently flagrant by considering four factors:  (1) the likelihood that the statements would prejudice the defendant or mislead the jury; (2) whether the remarks were isolated or part of a pattern; (3) whether the prosecutor's statements "were deliberately or accidentally presented to the jury"; and (4) whether the other evidence against the defendant was substantial.  *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000) (citing *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1994)).

At trial, the prosecutor introduced evidence that the petitioner had been involved in a previous robbery of Cheng's Garden Restaurant some weeks prior to charged robbery at the same locale.  The trial court accepted the prosecutor's theory that such evidence was admissible to prove identity pursuant to Michigan Rule of Evidence 404(b) in light of the petitioner's stated defense of misidentification.  In *Manning v. Rose*, 507 F.2d 889, 890-895 (6th Cir. 1974), the Sixth Circuit held that a state trial court's admission of testimony as to another robbery which allegedly occurred three days prior to the charged offense and four to five blocks from where the charged offense occurred, for the limited purpose of identification, did not offend constitutional principles because the petitioner had asserted an alibi defense.

In this case, because the petitioner's identity was placed at issue, the admission of this prior robbery to establish the petitioner's identity was proper.  *Manning,* 507 F.2d at 895.  Da Jing Zheng testified that although he was not certain, he believed that the petitioner had been present at the prior

robbery and had demanded money from him. The mere fact that Zheng may have been unable to state unequivocally that the petitioner participated in the first robbery does not mean that the admission of this evidence deprived the petitioner of a fair trial. *See United States v. Bowers,* 834 F.2d 607, 611 (6th Cir. 1987) (holding that testimony by a motel clerk to whom a raised postal money order had been passed by the defendant was admissible in a prosecution for passing altered postal service money orders, even though the clerk was unable to identify the defendant with certainty). The prosecutor here presented some evidence that the petitioner was involved in this prior robbery and it was for the jury to decide whether Zheng's identification was accurate. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) (holding that the weight that eyewitness testimony should be given is a question of fact for the jury).

Other than a blanket claim that Zheng and other witnesses equivocally identified the petitioner during the commission of the first robbery, the petitioner has presented no evidence that the prosecutor made anything other than a good faith argument to admit the "other act" evidence at issue here. A fair reading of the record does not indicate a pattern of misconduct, and several eye witnesses implicated the petitioner in the second robbery. Habeas relief on this claim is therefore unavailable to the petitioner.

### D.

In his fourth claim, the petitioner asserts that the prosecutor withheld exculpatory evidence by failing to inform defense counsel prior to trial that during the pre-trial investigation, the police used two interpreters, acting in tandem, to help the police take written statements from one or more of the Chinese-speaking witnesses.

During trial, co-defendant Armour's attorney requested that the interpreter who assisted in the taking of a statement from Hui Lian Cheng be brought into court so that he could bring in a prior inconsistent statement made by Cheng. In response, the prosecutor stated that he had just learned that not one, but two interpreters had been involved in the taking of this statement from Cheng, apparently because one of the interpreters either did not understand Cheng's dialect, the English language, or both. Tr. 10/20/92 at 16-17. The petitioner claims that this disclosure raises serious questions about the accuracy of the statements made to the police, the identifications made by the witnesses, and "possible collusion."

The state court of appeals rejected the petitioner's claim that this procedure "pervaded the pre-trial investigation," noting that the record established only that the procedure was used for taking a statement from Hui Lian Cheng. Because this statement was introduced into evidence against Armour and not the petitioner, information that affected the reliability of this statement would not have been favorable to the petitioner. The Court of Appeals also found the petitioner's claim that an independent Chinese investigator may have been able to turn up favorable information to be entirely speculative. *Hicks*, 1997 WL 33347877 at * 3.

The Due Process Clause of the Fourteenth Amendment requires a prosecutor to disclose to a criminal defendant evidence in the prosecutor's possession material to guilt or innocence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Failure to provide such evidence results in a constitutional violation when (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the state, either willfully or inadvertently; and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). The petitioner has the burden of establishing that the prosecution suppressed evidence, that such

-25-

evidence was favorable to the petitioner, and that the evidence was material. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). In a habeas proceeding, a *Brady* violation is grounds for setting aside a conviction or a sentence only if the failure to disclose favorable evidence "undermines confidence in the verdict[] because there is a reasonable probability that there would have been a different result had the evidence been disclosed." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its tardy disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also United States v. Benc*s, 28 F.3d 555, 560-561 (6th Cir. 1994). In this case, the petitioner presents no argument as to how he was prejudiced by the prosecutor's disclosure that police used two interpreters in questioning Hui Lian Cheng. It is also unclear how this evidence was material to the petitioner's case. The record indicates that the two interpreters were used only to obtain a written statement from this single witness. The petitioner offers no evidence that this procedure led to the faulty translation of Cheng's statement. Indeed, other evidence linked the petitioner to the crime scene including Michael Browner's testimony and identification of the petitioner, and Ta-Tashana Scott's identification of the vehicle that the petitioner and Armour used. Finally, as the court of appeals noted, Hui Lian Cheng's statement was not introduced against the petitioner, and it is unclear how evidence of two interpreters would be favorable to the petitioner. The petitioner, therefore, is not entitled to habeas relief on this claim.

E.

The petitioner next argues that the testimony by three of the witnesses was improperly translated both from Chinese to English and English to Chinese because interpreter Kin H. Yee did not translate these witnesses' testimony verbatim. In considering this claim, the state court of

appeals reasoned that the petitioner had failed to preserve the issue by not requesting a mistrial, requesting a different interpreter, or making any further objections to the translation. The state court of appeals further held that the issue was not preserved for appeal because the petitioner's counsel used this alleged error to his tactical advantage by arguing to the jury in closing argument that Yee's questionable interpretation cast doubt on the testimony of the Chinese-speaking witnesses. *People v. Hicks*, 1997 WL 33347877 at * 4.

In cases in which a prisoner challenges the fairness of language interpreters at trial, the Sixth Circuit has held that habeas corpus relief is available only if a petitioner can demonstrate that a trial court's action regarding the use of an interpreter denied the petitioner a fundamentally fair trial. *See United States v. Sanchez*, 928 F.2d 1450, 1455 (6th Cir. 1991), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369, 58 (6th Cir. 2002). Additionally, a claim of mistranslation by an interpreter does not implicate the Confrontation Clause if defense counsel did not question the qualifications of the interpreter at trial and made no objection to his or her use. *Soap v. Carter*, 632 F.2d 872, 874-875 (10th Cir. 1980).

Here, defense counsel never challenged Mr. Yee's qualifications as an interpreter, nor did he object to him being used to interpret for the three Chinese-speaking witnesses. Instead, defense counsel objected to Mr. Yee going beyond verbatim translation and adding his own comments. Defense counsel requested that the trial court admonish Mr. Yee to translate verbatim the testimony of the witnesses. Tr. 10/19/1992 at 29-31. In response to the trial court's inquiry on this matter, Mr. Yee stated the following:

> Yes. The problem may be with this particular witness talks a little bit more than the question that was asked for. So, since he was answering in Chinese I tried to reply to the question. Say, for instance, okay, did you see two guys at the door? And, he may just say hi or yes. Then, my reply may be yes, he saw two, adding that to my

> own way of thinking I thought maybe that would be the proper way to answer your
> question.  But, if you want strictly what he says I'll just ask him the question and he
> can answer strictly what it is.

*Id.* at p. 31.  The trial court asked Mr. Yee to translate the witnesses' testimony word for word.  *Id.* at pp. 31-32.

The record does not support a claim of repeated, prolonged, or continuous mistranslations by Mr. Yee.  Defense counsel merely pointed to several incidents in which a Chinese-speaking witness answered a question with a single word and Mr. Yee's translation was more than a single word.  Mr. Yee indicated that he interpreted in that manner to clarify a yes or no answer from a witness within the context of the question asked.  The lack of a verbatim translation of a non-English-speaking witness' testimony does not deny a defendant the right to confront and cross-examine a witness if the defendant fails to identify any specific instance of prejudice connected to mistranslated or untranslated statements.  *Rodriguez v. Young,* 906 F.2d 1153, 1167 (7th Cir. 1990).  Because the petitioner has failed to allege any specific instance of prejudice connected with the alleged mistranslation of the witnesses' testimony, he is not entitled to habeas relief on this claim.

### F.

The petitioner next asserts that he was denied the effective assistance of counsel because his state trial attorney (1) failed to investigate or call witnesses; (2) did not object to testimony of the petitioner's prior bad acts; (3) failed to object to evidence seized from Armour's residence; (4) failed to object to evidence that two interpreters were used in the questioning of Hui Lian Cheng; (5) did not object to the trial court's instruction on the malice element of felony murder; (6) failed to move for a mistrial after he discovered that the Chinese interpreter was not translating witnesses' responses verbatim; and (7) did not move to suppress the in-court identifications of the petitioner.

All of these claims except the seventh were raised on direct appeal and rejected by the state court of appeals.  It appears that the petitioner attempted to raise these claims again in his motion for relief from judgment.  Although it is unclear from the Rule 5 materials eventually submitted by the respondent whether the petitioner raised the seventh claim in the state court, the Court nonetheless finds this claim to be without merit.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Strickland*, 466 U.S. at 687.

-29-

1.

The petitioner first contends that defense counsel was ineffective for failing to present an alibi defense on his behalf. At the post-trial evidentiary hearing on the petitioner's ineffective assistance of counsel claim, Darryl Prince testified that he was aware that the petitioner had been tried for an armed robbery at a Chinese restaurant at Six Mile and Southfield Roads in Detroit. Prince said that he had told both the petitioner's attorney and the petitioner's mother that the petitioner was with him that night at a bar called Henry's Palace on Fenkell Street west of Livernois Avenue. Prince remembered this night because he got the petitioner drunk. Prince arrived at the bar at almost eleven o'clock and stayed with the petitioner at the bar until closing time. Prince claimed that he knew that these events occurred the night of the murder because he was informed the following day that someone had been killed during an armed robbery at the Chinese restaurant. *Ginther* Hearing T., 11/9/94 at 84-92.

At a subsequent hearing during the *Ginther* proceedings, the petitioner testified that he accompanied his attorney to Detroit police headquarters to turn himself in. On that day, the petitioner maintains, he told his attorney that he had an alibi defense: he was at a club on the night of the robbery and murder with Darryl Prince, Devon Wilson, and a female dancer called "Nicky." *Ginther* Hearing T., 11/23/94 at 22-25, 33-34, 37. The petitioner claims he was prepared to call Prince and Wilson as alibi witnesses at his trial. *Id.* at 38.

The petitioner's attorney, Rene Cooper, initially testified that he could not remember why he failed to advance an alibi defense at trial and refused to speculate as to his reasons for not doing so. However, Cooper did not dispute that he had spoken to alibi witnesses. On cross-examination, Cooper indicated that the prosecutor had offered the petitioner a reduced plea in exchange for the

-30-

petitioner's agreeing to testify against Armour.  Cooper further testified that the petitioner initially agreed to accept the plea in exchange for his testimony.  Cooper stated that the petitioner knew that he would have to testify that he was present at Cheng's Garden restaurant during the commission of the crimes.  Some time later, however, the petitioner rejected the plea offer.

Cooper also noted that he had spoken to the petitioner and the petitioner's mother about alibi witnesses.  Cooper testified that he could remember only having difficulty pinning down exact dates and times when the petitioner was with these witnesses.  In addition, Cooper could not recall speaking with the petitioner about the decision not to file an alibi notice, but insisted that the decision would have been made by both him and the petitioner.  Cooper later testified that he made the decision early in his investigation of the case not to call alibi witnesses, and that in fact he had spoken with the alibi witnesses.  Cooper stated that he told the petitioner that it would be foolish to call alibi witnesses who could not be sure of the dates and times they were with the petitioner.

The trial court rejected this ineffective assistance of counsel claim, finding that the questionable credibility of the witnesses and their inability to remember dates they had been with the petitioner presented a strategic choice to trial counsel.  The trial court further concluded that the petitioner had failed to demonstrate prejudice, reasoning that Darryl Prince first saw the petitioner in front of Henry's Palace at about eleven o'clock at night and the robbery and murder at Cheng's Restaurant occurred between 10:30 and 10:45 p.m., leaving a difference of fifteen to twenty minutes. The driving time between these two locations, the court noted, was no more than ten minutes. *People v. Hicks,* Memorandum Opinion and Order Denying Motion for New Trial, pp. 7-8, 14 (Detroit Recorder's Court, July 28, 1995).

The Michigan Court of Appeals adopted the trial court's prejudice analysis and rejected the petitioner's claim. Because the evidence at trial showed that the crime occurred at 10:30 p.m, took no more than five or six minutes to complete, and the driving time between the two locations was no more than ten minutes, testimony that the petitioner was at a nearby topless bar twenty minutes after the crime had taken place would not have provided the petitioner with an alibi defense. Therefore, the court concluded that the petitioner failed to show the necessary prejudice to sustain an ineffective assistance of counsel claim. *People v. Hicks*, 1997 WL 33347877 at * 6.

In the present case, the petitioner has not shown a constitutional violation. Prince's testimony at the *Ginther* hearing did not cover the critical period of time, that is, the time during which the murder occurred. *See Trigones v. Hall,* 115 F. Supp. 2d 158, 169-170 (D. Mass. 2000). The petitioner was therefore not deprived of effective assistance of counsel based upon counsel's failure to present an alibi defense, where the petitioner's alibi did not place him away from the scene of the crime until after the murder was committed. *United States v. Hamblin,* 911 F.2d 551, 556 (11th Cir. 1990) (citing to *Williams v. Weldon,* 826 F.2d 1018, 1022 (11th Cir. 1987)). The state court of appeals decision that the petitioner was not deprived of the effective assistance of counsel was neither contrary to nor an unreasonable application of Supreme Court precedent.

2.

The petitioner next claims that defense counsel was ineffective for failing to move for a mistrial after the prosecution failed to show that the petitioner was involved in the prior armed robbery at the same restaurant several days earlier. The Michigan Court of Appeals rejected this claim, noting that counsel instead chose to cast doubt on the credibility of the Chinese-speaking witnesses in his summation by arguing that the witnesses could not get their stories straight with

respect to the identity of Armour's partner in the prior robbery. The Michigan Court of Appeals found this to be a valid trial strategy. *People v. Hicks*, 1997 WL 33347877 at * 5.

Trial counsel's decision to point out the inconsistencies of the three witnesses was not unreasonable and constituted sound trial strategy under the circumstances. Moreover, Da Jing Zheng recalled at trial that the petitioner was present with Armour during the first robbery, although Zheng was not entirely certain. Therefore, there was little basis to move for a mistrial based on the prosecutor's failure to link the petitioner to the previous robbery. In addition, defense counsel exploited the prosecution witnesses' inconsistencies in his closing argument. The petitioner has not shown that defense counsel's failure to move to strike the testimony concerning the prior robbery or for a mistrial was objectively unreasonable under the circumstances of this case. *See Strickland*, 466 U.S. at 688 (internal quotations omitted). The state court of appeals' decision therefore was neither contrary to nor an unreasonable application of Supreme Court precedent.

3.

The petitioner further argues that defense counsel was ineffective for failing to move for the suppression of .38 caliber ammunition that was seized from Armour's residence. The state court of appeals ruled that the petitioner had failed to overcome the presumption that this was valid trial strategy. The court of appeals stated:

> Likewise, defendant has failed to overcome the presumption of trial strategy with respect to counsel's decision not to exclude evidence that .38 caliber ammunition was recovered from codefendant's residence. Given the facts that a spent .38 bullet was recovered from Cheng's clothes, Michael Browner testified that defendant had a .38, Browner testified that defendant pointed in Cheng's direction before the gunshot, and Browner testified that codefendant had a .357, defendant's jury might otherwise have been more likely to believe that defendant was the shooter. Therefore, counsel's performance was not deficient.

-33-

*People v. Hicks*, 1997 WL 33347877 at *5.

The state court of appeals' decision regarding prejudice is sound. The failure to move for the exclusion of evidence that might shift the blame for the actual killing to the co-defendant is not unsound trial strategy.

Moreover, the petitioner has not suggested a valid basis on which trial counsel could have sought exclusion of the evidence. It is undisputed that Steven Cheng was killed by .38 caliber bullet. The record is replete with evidence that the petitioner was armed with a .38 caliber firearm. Evidence that .38 caliber ammunition was discovered at Armour's residence was relevant to prove the crimes charged, as it tended to link the petitioner to those crimes. Trial counsel was therefore not ineffective for simply failing to make a meritless objection. *See Millender v. Adams*, 187 F. Supp. 2d 852, 878 (E.D. Mich. 2002) (defendant was not denied effective assistance of counsel by his counsel's failure to object to the admission of a handgun and a shotgun found at the co-defendants' houses, and pliers found at the scene of home invasion, where it was undisputed that the victims were assaulted with a pair of pliers, two masked intruders were armed with handguns, and the unmasked intruder was armed with a long gun). The Michigan Court of Appeals' decision on this argument was not contrary to or an unreasonable application of Supreme Court precedent.

4.

The petitioner next claims that his defense attorney was ineffective for failing to object to the

prosecutor's violation of the discovery order by failing to inform counsel prior to trial about the use of two interpreters during the pretrial investigation. The state court of appeals rejected this claim,

-34-

because the petitioner had failed to demonstrate the necessary prejudice. *People v. Hicks*, 1997 WL 33347877 at * 5.

As noted, the prosecutor's late disclosure that multiple interpreters were used during the pretrial investigation was not material. The materiality standard that a habeas petitioner is required to meet to prove a *Brady* violation is identical to the prejudice standard required to prevail on an ineffective assistance of counsel claim. *See Martin v. Cain*, 246 F.3d 471, 477 (5th Cir. 2001). The petitioner is therefore unable to demonstrate prejudice, and the state court of appeals' determination was a reasonable application of Supreme Court precedent.

5.

The petitioner next asserts that his attorney was ineffective for failing to object to the trial court's instruction on the malice element of felony murder. This Court has found, however, the trial court's jury instructions in this regard were proper. If the jury instructions did not violate the defendant's due process rights, the petitioner cannot demonstrate prejudice resulting from trial counsel's failure to object to them. In a case similar to the present one, the Eighth Circuit considered whether an attorney's failure to object to jury instructions on felony murder that omitted specific reference to the malice element amounted to ineffective assistance. *Miles v. Nix*, 911 F.2d 146, 148 (8th Cir. 1990). The court in that case found that although the trial court incorrectly omitted instructions on malice, the instructions as a whole adequately informed the jurors that malice was an element of the charged crime and, as a result, the attorney's performance was not deficient. The instructions in this case adequately conveyed to the jury that malice was an element of first-degree felony murder. Counsel therefore was not ineffective for failing to object to the instructions as they were given in this case.

-35-

6.

The petitioner next contends that defense counsel should have moved for a mistrial when he discovered that the interpreter was not translating the Chinese-speaking witnesses' testimony verbatim. In rejecting this claim, the state court of appeals noted that the petitioner's counsel attempted to cast doubt on the testimony of these three witnesses by arguing that the interpreter was not providing a word-for-word translation of their testimony. The state court of appeals therefore concluded that trial counsel's choice not to request a mistrial to be a valid trial strategy. *People v. Hicks*, 1997 WL 33347877 at * 5.

Trial counsel's decision to attack the veracity of the Chinese-speaking witnesses instead of seeking a mistrial based on the interpreter's translation style was within the wide range of professionally competent conduct. Moreover, the petitioner has failed to establish how he was prejudiced by Mr. Yee's interpretation especially in light of Mr. Yee's explanation that he was attempting to clarify the remarks of the Chinese witnesses. The petitioner does not point to specific instances of incorrect translation or show that Mr. Yee's translation, in certain instances not verbatim, was materially deficient. *See Rodriguez,* 906 F.2d at 1167 (holding that defendant was not denied the effective assistance of counsel when his defense counsel did not insist on verbatim passages of a Spanish-speaking witness' testimony, where the defendant failed to identify any specific instance of prejudice connected to the mistranslated or untranslated statements). Trial counsel's strategic choice was neither deficient performance nor prejudicial.

7.

The petitioner lastly claims that defense counsel was ineffective for failing to move to suppress his in-court identification by the prosecution's witnesses as unduly suggestive. In his

-36-

supplement to his petition, the petitioner alleges that the pretrial identification procedures were suggestive because two witnesses were unable to positively identify him, and one witness indicated at the pretrial lineup that she was not certain in her identification of the petitioner. The petitioner does not state whether he is raising the suggestive identification procedure claim as an independent issue. This issue, however, can be addressed in tandem with the petitioner's related ineffective assistance of counsel claim.

The use of suggestive pretrial identification procedures violates the Due Process Clause. *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). The accused bears the initial burden of proving that the identification procedures were impermissibly suggestive. *See United States v. Wade*, 388 U.S. 218, 240 & n.31 (1967). The court then must determine whether the identification was nonetheless reliable. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992).

However, the fact that a witness cannot identify the accused at a pretrial lineup procedure does not by itself establish a suggestive identification procedure and is generally an insufficient basis to exclude his or her testimony identifying the accused in court; a witness's uncertainty goes to the weight, not the admissibility, of the identification testimony. *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987); *United States v. Hamilton*, 684 F.2d 380, 383 (6th Cir. 1982). Similarly, any lack of certainty on the part of a witness in his identification of the defendant at trial goes to the weight of his testimony, not its admissibility. *Causey*, 834 F.2d at 1286.

The petitioner in this case has not articulated a reason why the respective identification procedures were suggestive. Absent such a showing, it is unlikely that the trial court would have suppressed the identifications. The failure of witnesses to identify the petitioner at the pre-trial lineup would not have required exclusion of their in-court identification of him as the perpetrator,

nor would an equivocal or uncertain identification have been grounds to exclude the in-court identification. Consequently, the petitioner has not shown any deficiency resulting from his trial attorney's failure to move for exclusion of the identification evidence.

G.

In his eighth claim, the petitioner contends that there was insufficient evidence to convict him of first-degree felony murder because there was no evidence that he intended to kill the victim or encouraged his co-defendant to kill the victim. The Michigan Court of Appeals rejected this claim, finding that the petitioner's participation in this robbery while he was armed with a gun and with the knowledge that his co-defendant was armed with a weapon was sufficient evidence of malice to sustain the conviction. *People v. Hicks*, 1997 WL 33347877 at * 2.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Normally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state

-38-

court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent.

As discussed earlier, the elements of first-degree felony murder are (1) the killing of a human being; (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result, (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute. *Carines*, 460 Mich. at 759.  To convict a defendant of felony murder in Michigan, the prosecution must prove that the defendant acted either with an intent to kill, an intent to do great bodily harm, or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm.  *Aaron*, 409 Mich. at 733. The facts and circumstances surrounding a killing can give rise to an inference of malice, and a jury may infer malice from evidence that a defendant intentionally set into motion a force likely to cause death or great bodily harm.  *Carines*, 460 Mich. at 759.

To support a finding that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Carines*, 460 Mich. at 757-758.  In order to be found guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981).

-39-

Michigan courts have had little difficulty finding malice as an element of murder from evidence that a defendant voluntarily participated in robbing a victim using a firearm, even though that defendant was not the actual shooter. *See, e.g., People v. Hart*, 161 Mich. App. 630, 411 N.W.2d 803 (1987), (finding that the defendant's involvement in a robbery where a gun was involved showed wanton and wilful disregard of the likelihood that his behavior would cause death or serious bodily injury); *People v. Turner,* 213 Mich. App. 558, 572-573, 540 N.W.2d 728, 735 (1995), *overruled in part on other grounds by People v. Mass*, 464 Mich. 615, 628 N.W.2d 540 (2001) (finding evidence of malice where the defendant knew that the co-defendant was armed during the commission of the armed robbery in which the co-defendant killed the victim).

In this case, the evidence presented at trial clearly established that the petitioner participated in a robbery while armed and the petitioner knew that his co-defendant was also armed. The petitioner's involvement in the robbery of Cheng's Garden Restaurant, where both he and Armour used firearms, was conduct that created a high risk of death or serious injury. The Michigan Court of Appeals accurately summarized the facts in this case and made a reasoned decision when applying the *Jackson* standard. The state court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. The petitioner is therefore not entitled to habeas relief on this claim.

### H.

Lastly, the petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial. This Court has determined that the petitioner's claims lack merit; therefore, he cannot establish that habeas relief is warranted based upon a claim of cumulative error. Further, the Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional

claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, the petitioner is not entitled to habeas relief on this ground.

IV.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED** that the petitioner's motion for oral argument [dkt # 24], motion to dismiss unexhausted claims, expand record, and for leave to file a reply [dkt # 25], and the respondent's motion for order [dkt # 29] are **DENIED** as moot.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: October 7, 2005

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 7, 2005.

s/Tracy A. Jacobs
TRACY A. JACOBS

-41-