UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LLOYD HICKS,

        Petitioner,

                                    Case Number 00-10492-BC
v.                                        Honorable David M. Lawson

BARBARA BOCK,

        Respondent.
_____/

## ORDER DENYING A CERTIFICATE OF APPEALABILITY

The petitioner has appealed the Court's order denying his application for the writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the Court for determination of whether a certificate of appealability should issue.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

I.

A.

In his first habeas claim, the petitioner alleged that the trial court violated his due process rights when the trial court failed to give the special instruction for codefendants in felony murder cases and instructed the jurors with vague language, which allowed the jury to reach a verdict of guilty without finding the required element of malice.

The Court determined that under Michigan law, a first-degree felony murder conviction requires proof that the defendant acted either with an intent to kill, an intent to do great bodily harm, or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm.  *See People v. Aaron*, 409 Mich. 672, 733; 299 N.W.2d 304 (1980).

In this case, the trial court explained that when the murder was committed, the prosecution had to show that the petitioner either had the intent to kill, the intent to do great bodily harm, or that he created a very high risk of death or great bodily harm knowing that death or such harm was the likely result of such actions.  Tr. 10/21/1992 at 74-76.  The Court held that the trial court's instructions adequately explained the element of malice to the jury and did not suggest to them that they could infer intent solely from the commission of the underlying felony.

This Court's determination that the instructions given by the state trial court presented no "reasonable likelihood that the jury has applied the challenged instruction in a way" inconsistent with the Constitution, *Boyde v. California*, 494 U.S. 370, 380 (1990), would not stimulate debate among reasonable jurists.  This issue does not deserve encouragement to proceed further.

B.

In his second claim, the petitioner alleged that his waiver of his Constitutional right to testify was not established as being free, knowing, and intelligent. He argues that it was wrong of this Court to cite to *United States v. Webber* for the proposition that, when a defendant is not called to testify in his trial, the defendant's assent to this waiver is presumed. *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000). In *Webber*, the Sixth Circuit held that, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." 208 F.3d at 551.

The petitioner argues that *Webber* does not control this case because it conflicts with *Johnson v. Zerbst*, 304 U.S. 458 (1938) (holding that courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights" (internal quotes omitted)), and because "[h]abeas relief is based on Supreme Court precedent, not the Court of Appeals." Motion for COA at 7. However, *Johnson* was decided many years before *Webber* and did not involve the waiver of the right to testify. Furthermore, *Webber* involved the interpretation of Supreme Court precedent, and this Court is bound by the Sixth Circuit's interpretation of Supreme Court law. The petitioner failed to alert the trial court to his wish to testify. Thus, reasonable jurists would not find this issue debatable.

C.

In his third habeas claim, the petitioner alleged that he was denied a fair trial as a result of prosecutorial misconduct when the prosecutor introduced "other acts" evidence that the petitioner

may have participated in a robbery of the same restaurant that occurred three days before the robbery in question. To support this argument, the petitioner cites cases involving the federal rules of evidence. This Court held that the admission of "other acts" evidence is a matter of state law that is usually not subject to habeas review. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

The petitioner argues that only one witness tentatively identified him as a participant in the prior robbery. However, he fails to show that he was prejudiced by the introduction of this evidence since the jury was free to decide what weight to attribute to this testimony. The petitioner has not shown that the prosecutor's introduction of "other acts" evidence violated his constitutional rights. He has not shown that the state court's ruling was contrary to, or an unreasonable application of, Supreme Court precedent, 28 U.S.C. § 2254(d), and the issue is not one that deserve encouragement to proceed further.

D.

The petitioner's fourth habeas claim is that he was deprived of due process when the prosecutor failed to disclose prior to trial that the police used two interpreters to question one of the witnesses because that information could have been useful in impeaching the witness's credibility and reliability. The state court of appeals rejected the petitioner's claim that this procedure "pervaded the pre-trial investigation," noting that the record established only that the procedure was used for taking a statement from Hui Lian Cheng. Because this statement was introduced into evidence against the codefendant and not the petitioner, information that affected the reliability of this statement would not have been favorable to the petitioner.

This Court held that in a habeas proceeding, a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), is grounds for setting aside a conviction or a sentence only if the failure to disclose favorable

-4-

evidence "undermines confidence in the verdict[] because there is a reasonable probability that there would have been a different result had the evidence been disclosed." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). This Court determined that the fact that the police used two witnesses was disclosed during the trial, and the petitioner failed to describe how this information would have implicated the witness's credibility or reliability. This holding is not subject to reasonable debate.

E.

The petitioner's fifth claim is that he was deprived of a fair trial when the interpreter at trial failed to translate the testimony of the witnesses verbatim. The petitioner claims that he is entitled to a certificate of appealability as to this issue because it would be impossible for him to identify specific instances of prejudice regarding the translation since the transcript is entirely in English. However, the translator acknowledged during the trial that he had merely been "clarifying" the answers to the questions. In response to the trial court's inquiry on this matter, the translator explained his non-verbatim translations as follows:

> Yes. The problem may be with this particular witness talks a little bit more than the question that was asked for. So, since he was answering in Chinese I tried to reply to the question. Say, for instance, okay, did you see two guys at the door? And, he may just say hi or yes. Then, my reply may be yes, he saw two, adding that to my own way of thinking I thought maybe that would be the proper way to answer your question. But, if you want strictly what he says I'll just ask him the question and he can answer strictly what it is.

Tr. 10/19/1992 at 31. The trial court responded by asking Mr. Yee to translate the witnesses' testimony word for word. *Id.* at 31-32. The petitioner appears to allege that the translator did not merely "clarify" the answers as he described but in fact altered the testimony. However, the Court held that the petitioner has failed to show that the translator did anything other than what he acknowledged doing, and has failed to show that the petitioner was prejudiced from a slight non-

verbatim translation. The petitioner is not entitled to a certificate of appealability on this issue under the prevailing standard.

F.

The petitioner's sixth claim includes all of the petitioner's ineffective assistance of counsel issues.

1.

The first claim is that trial counsel was ineffective when he failed to investigate and present alibi witnesses. The petitioner claims that counsel gave conflicting testimony at the *Ginther* hearing. However, the conflicting testimony given at the hearing is a result of the taking of testimony over several different hearing dates. At first, counsel did not remember details of the case; thereafter, counsel had reviewed his notes from the case. The petitioner does not counter the conclusions of the state court that the alibi witnesses would not have been helpful because one of them could not account for the petitioner's actions until after the crime, and others were not sure of the dates and times that they were with the petitioner.

2.

The second claim is that trial counsel was ineffective when he failed to object to the erroneous instruction on malice. Because this court found that the jury instruction was not erroneous, counsel's failure to object to it was not objectively unreasonable.

3.

The third claim is that trial counsel was ineffective when he failed to object and move for a mistrial because the interpreter was not qualified and was not interpreting verbatim. Although the petitioner claims that the interpreter was not qualified because he stated that he was "almost certified

by the U.S. Government." However, the petitioner cites to no authority that an interpreter must be certified by the federal government to be qualified to interpret at a trial. There is no evidence in the record that the interpreter did not understand the witnesses or speak sufficient English to translate properly. Because there is no evidence that the nonverbatim interpretation was prejudicial, the failure to object to the translation did not constitute ineffective assistance for counsel.

4.

The fourth claim is that trial counsel was ineffective when he failed to object to the seizure of .38 caliber ammunition from the codefendant's house. The petitioner, however, does not rebut the state court's observation that:

> Given the facts that a spent .38 bullet was recovered from Cheng's clothes, Michael Browner testified that defendant had a .38, Browner testified that defendant pointed in Cheng's direction before the gunshot, and Browner testified that codefendant had a . 357, defendant's jury might otherwise have been more likely to believe that defendant was the shooter. Therefore, counsel's performance was not deficient.

Thus, the petitioner has not shown a violation of his constitutional rights as to this issue.

5.

The fifth claim is that trial counsel was ineffective when he failed to move to suppress the in-court identifications. The petitioner argues that an in-court identification is suggestive where a witness has failed to make a pretrial identification. However, Hui Lian Cheng, Zhao Ming Cheng, and Da Jing Zheng all identified the petitioner in photographic or live lineups prior to trial. Thus, the petitioner is not entitled to a certificate of appealability on this issue.

G.

The petitioner's seventh habeas claim is that he was denied due process because there was insufficient evidence introduced at trial to sustain a verdict of felony murder. The petitioner claims

that this Court was wrong in citing to *People v. Carines*, 460 Mich. 750, 597 N.W.2d 130 (1999), for the proposition that all that is necessary to support a charge of felony murder is *knowledge* that the principal intended the commission of the crime. In *Carines*, the Michigan Supreme Court defined the elements of felony murder as:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery].

*Id.* at 758-59. The petitioner argues that *knowledge* is a lesser standard than *intent*. However, the element stated by the court is the *intent* to create a very high risk of death or great bodily harm *with knowledge* that death or great bodily harm is the probable result. Furthermore, the petitioner cites to no authority indicating that the Michigan Supreme Court's recitation of the standard is wrong or inapplicable to his case.

Michigan courts have had little difficulty finding malice as an element of murder from evidence that a defendant voluntarily participated in robbing a victim using a firearm, even though that defendant was not the actual shooter. *See, e.g., People v. Hart*, 161 Mich. App. 630, 411 N.W.2d 803 (1987), (finding that the defendant's involvement in a robbery where a gun was involved showed wanton and wilful disregard of the likelihood that his behavior would cause death or serious bodily injury); *People v. Turner,* 213 Mich. App. 558, 572-573, 540 N.W.2d 728, 735 (1995), *overruled in part on other grounds by People v. Mass*, 464 Mich. 615, 628 N.W.2d 540 (2001) (finding evidence of malice where the defendant knew that the co-defendant was armed during the commission of the armed robbery in which the co-defendant killed the victim).

The petitioner's involvement in the robbery of the restaurant, where both he and his codefendant used firearms, was conduct that created a high risk of death or serious injury. This Court's holding that the state court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent likely would not be debatable among reasonable jurists. The petitioner is therefore not entitled to a certificate of appealability on this claim.

H.

Finally, the petitioner claims that the cumulative effect of the trial errors in his case entitle him to habeas relief. This Court has determined that the petitioner's claims lack merit; therefore, he cannot establish that habeas relief is warranted based upon a claim of cumulative error. Further, the Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, the petitioner is not entitled to a certificate of appealability on this ground.

II.

Accordingly, it is **ORDERED** that a certificate of appealability [dkt # 32] is **DENIED** with respect to all of the petitioner's claims.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 17, 2005

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 17, 2005.

s/Tracy A. Jacobs
TRACY A. JACOBS